SLIP OP. 07-6

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HYLSA, S.A. DE C.V., | |
| Plaintiff, | |
| | Before: Jane A. Restani, Chief Judge |
| v. | |
| UNITED STATES, | Court No. 05-00679 |
| Defendant, | |
| UNITED STATES STEEL CORPORATION, | |
| Defendant-Intervenor. | |

**OPINION AND ORDER**

[Defendant's and Defendant-Intervenor's motions to dismiss for mootness denied]

Dated: January 17, 2007

Preston Gates Ellis & Rouvelas Meeds, LLP (Jeffrey M. Winton) for the plaintiff.

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Michael D. Panzera); Douglas S. Ierley, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, of counsel, for the defendant.

Skadden Arps Slate Meagher & Flom, LLP (Robert E. Lighthizer, John J. Mangan, Jeffrey D. Gerrish, and Neena G. Shenai), for defendant-intervenor United States Steel Corporation.

Restani, Chief Judge:  This matter is before the court on motions of the defendant and defendant-intervenor to dismiss on the basis of mootness.

**STATEMENT OF FACTS**

On October 18, 2005, the United States Department of Commerce (the

Court No. 05-00679                                                                                                   Page 2

"Department") issued the final results in the ninth administrative review of an antidumping duty order on Oil Country Tubular Goods from Mexico, covering the period of review of August 1, 2003, through July 31, 2004.  Certain Oil Country Tubular Goods from Mexico, 70 Fed. Reg. 60,492 (Dep't Commerce Oct. 18, 2005) (notice of final results and partial rescission of antidumping duty administrative review) ("Ninth Review Final Results").  Hylsa, S.A. de C.V. ("Hylsa") filed a summons and complaint commencing the present action to challenge various aspects of the Department's Ninth Review Final Results on December 16, 2005.

Thereafter, on September 18, 2006, the Department issued the final results in the next administrative review (i.e., the tenth administrative review) of Oil Country Tubular Goods from Mexico, covering the period of review of August 1, 2004 through July 31, 2005.  Certain Oil Country Tubular Goods from Mexico, 71 Fed. Reg. 54,614 (Dep't Commerce Sept. 18, 2006) (notice of final results and partial rescission of antidumping duty administrative review) ("Tenth Review Final Results").  In the Tenth Review Final Results, the Department determined a weighted-average dumping margin for Hylsa of 0.62%.  Id. at 54,615.  In turn, this rate has become the cash deposit rate for Hylsa until the completion of the next administrative review.

The parties agree that all of the entries for the relevant period have been liquidated[1] and that the current litigation cannot affect those entries or the new deposit rate for continuing entries.  Normally, this would result in a dismissal for mootness.[2]  Hylsa opposes the

---

[1] Liquidation is a final determination of duties owed, and suits such as this do not alter final liquidations.  Zenith Radio Corp. v. United States, 710 F.2d 806, 810 (Fed. Cir. 1983).

[2] With regard to cases under section 751 of the Trade Agreements Act, as amended, 19 U.S.C. § 1675, where all potentially affected entries have been liquidated, as here, this principle
(continued...)

motions to dismiss for mootness, however, on the basis of the "collateral consequences" doctrine. Hylsa argues that its future ability to obtain revocation of the antidumping order covering its merchandise is adversely affected by the non-de minimis dumping margin found in the instant review, and that this constitutes a separate injury from the assessment of duties on the discrete set of entries covered by the review in question.

## DISCUSSION

In the normal course, parties avoid mootness in connection with judicial review of these types of agency periodic review determinations by obtaining injunctions of liquidation of entries pursuant to 19 U.S.C. § 1516a(c) and (e). Whether or not Congress foresaw at the outset how common such injunctive relief for periodic review cases would become, it is now the norm[3] and has been so for some time.[4]

Here, Hylsa did not preserve, with certainty, a live controversy by initially seeking injunctive relief, despite its ability to do so. The question now is whether this case presents a justiciable controversy because future administrative relief may rest, at least partially,

---

[2](...continued)
has been accepted virtually without challenge since it was set forth in Zenith, 710 F.2d at 810. Accord Am. Spring Wire Corp. v. United States, 7 CIT 2, 4–5, 578 F. Supp. 1405, 1406–07 (1984).

[3]Unusual fact patterns, most typically involving non-duty payers', i.e. domestic parties', requests for injunctions, however, may result in denial of injunctive relief. See, e.g., Carpenter Tech. Corp. v. United States, Slip. Op. 07-1, 2007 WL 14756 (CIT Jan. 3, 2007).

[4]For example, injunctive relief was so automatic at the time of passage of the United States-Canada Free Trade Agreement in 1988 that Congress provided for automatic suspension of liquidation of entries covered by periodic review litigation, upon request. See 19 U.S.C. § 1516a(g)(5)(c); see also Tembec, Inc. v. United States, __ F. Supp. 2d __, 2006 WL 2942870, *6 (CIT Oct. 13, 2006). This rule now applies to NAFTA disputes. Id.

on the outcome here.

Under 19 C.F.R. § 351.222(b)(2), three years of zero or de minimis margins is a critical factor to be considered by the Secretary of Commerce in deciding whether to revoke an antidumping duty order as to a party. The de minimus determination is, in all likelihood, a necessary condition for termination of a dumping order under this provision.[5] Further, the results of the current action on Hylsa's dumping margins may affect whether or not the antidumping order sunsets after five years pursuant to a review under 19 U.S.C. § 1675(c). See 19 U.S.C. § 1675(c) (administrative authority to consider margins determined in periodic reviews). Thus, there are potential continuing legal consequences to this type of periodic review case, whether or not a discrete set of entries or ongoing rates are to be affected. The issue is whether these legal consequences are of such magnitude or certainty that this action is not moot.

The court is not concerned by the "horrible" cited by the Department that none of these types of cases would ever be mooted. The court cannot discern that Congress actually expected these cases to be mooted. Rather, when the provisions were first enacted, Congress may have expected that the cases would be resolved so promptly that mootness would not be an issue.[6] Nonetheless, the court need not address each possible fact scenario. Accordingly, the

---

[5]It is also important to note that the court is able to provide the relief that the plaintiff is seeking, in the form of a declaration as to whether the margin is de minimus. The effect of such a determination would have clear and tangible effects on the parties' future legal relationship. Cf. 13A Charles Alan Wright et al., Federal Practice and Procedure § 3533.3 n.43 (Supp. 2006) ("A case is not moot if the prospect of repetition may affect continuing relationships in clear and tangible ways.").

[6]This may explain why Congress provided for injunctive relief under 19 U.S.C. § 1516a(c) in terms that imply more extraordinary conditions than are actually required.
(continued...)

court addresses whether, despite the lack of effects on liquidated entries or deposit rates, a live controversy permitting federal jurisdiction currently exists on these facts.

In criminal cases, it is clear that there exists a well-accepted doctrine of collateral consequences, which prevents mootness even after a defendant has been released from prison. See Sibron v. New York, 392 U.S. 40, 54–58 (1968). Obviously, there are many consequences to a criminal conviction, including loss of voting privileges, probation, future sentencing results, impeachment in other cases, and so on. Id. These consequences are all collateral to the conviction and sentence of imprisonment.

It is not so clear that there exists a true "collateral consequences" exception to mootness for civil cases. There are different kinds of relief that may be sought in civil actions, and which are perhaps ancillary to the main relief sought, but whether they are "collateral consequences" in the same sense as is used in criminal cases is another issue. For example, civil challenges to administrative policies may survive resolution of a specific governmental action. See, e.g., City of Houston v. Dep't of Housing and Urban Dev., 24 F.3d 1421, 1428 (D.C. Cir. 1994) ("It is well-established that if a plaintiff challenges both a specific agency action and the policy that underlies the action, the challenge to the policy is not necessarily mooted merely because the challenge to the particular agency action is moot.").

Further, maintenance of the administrative status quo may lead to jurisdiction over disputes as to the consequences of the status quo. As an example, the Federal Circuit

---

[6](...continued)
Perhaps, amendment of the statute to provide for automatic suspension of liquidation pending periodic review, as in NAFTA cases, would bring some practicality back into the statutory scheme. See supra note 4.

appears to recognize that some "collateral consequences" stemming from administrative proceedings do prevent mootness. See Apotex, Inc. v. Thompson, 347 F.3d 1335, 1345 (Fed. Cir. 2003); Minn. Mining & Mfg. Co. v. Barr Labs., Inc., 289 F.3d 775, 780–81 (Fed. Cir. 2002). The Fifth Circuit has also recognized that some collateral consequences of administrative action may prevent mootness. See Daily v. Vought Aircraft Co., 141 F.3d 224, 228 (5th Cir. 1998) (disbarred attorney's reinstatement did not moot challenge to disbarment because of collateral effects on law practice).

Here, Hylsa has challenged a determination as to antidumping margins, and it wishes to continue that suit. Hylsa has shown, and it is not disputed, that this determination may have consequences for future revocation determinations. It has been demonstrated that revocation is a real issue for this plaintiff because of Hylsa's history of inconsequential or borderline margins. Congress and the Department have by statute and regulation made the margins at issue relevant to subsequent revocation determinations. That Hylsa has foregone its right to get monies refunded on particular entries does not end this dispute, because Hylsa continues to seek a margin determination which will provide a basis for revocation. This distinguishes the current action from cases where the collateral consequence alleged is merely speculative. See, e.g., Pilate v. Burrell (In re Burrell), 415 F.3d 994, 998–99 (9th Cir. 2005) (holding that a mere speculation that a lower court judgment might taint the plaintiff's interests is insufficient to avoid mootness on appeal). Further, the requirement that the consequences be legal ones has been met. See Pub. Utilities Comm'n of State of Cal. v. F.E.R.C., 100 F.3d 1451, 1460–61 (9th Cir. 1996).

How direct the consequences need to be is not clear. There is no case law in the

trade area directly on point. For instance, Zenith, cited by the defendants, does not address the issue of lack of mootness if deposit rates are at issue, which the parties here appear to accept, let alone mootness in the context of consequences for revocation. Unlike this case, Zenith, which involved a domestic industry injunction seeker, merely concluded that the dispute as to the amount of duties owed on particular entries would be mooted if liquidation were not enjoined. Zenith, 710 F.2d at 810. This was enough to permit injunctive relief to prevent liquidation and to preserve jurisdiction over that claim.[7] Id. The issue now before the court was not before the Zenith court, and the parties to the current dispute have cited no other case addressing this issue.

Defendants cite Samsung Electronics Co., Ltd. v. Rambus, Inc., 398 F. Supp. 2d 470 (E.D. Va. 2005), as stating the proposition that if a plaintiff causes an action to become moot, it cannot invoke the collateral consequences rule. That is a rather broad generalization from Samsung's concern about an administrative status quo imposed by the parties themselves.[8] See id. at 477–78. Further, although a plaintiff's failure to obtain stays can result in mootness in various contexts, it appears that this particular kind of injunction is necessary to keep only some types of relief available.[9]

The court concludes that whatever the breadth of a collateral consequences rule

---

[7] Domestic parties, of course, do not pay duties. Zenith was concerned with the effect on its competitors' prices.

[8] This enigmatic statement may refer to settlements pending appeal.

[9] For example, in bankruptcy cases, a claim is equitably moot if the claimant "[has] failed and neglected diligently to pursue [the] available remedies to obtain a stay of the objectionable orders of the Bankruptcy Court and [has] permitted such a comprehensive change of circumstances to occur as to render it inequitable for [the] court to consider the merits of the appeal." Trone v. Roberts Farms, Inc. (In re Roberts Farms), 652 F.2d 793, 798 (9th Cir. 1981).

for civil cases, this case is not moot.  All of the cases discussed above seem to accept that if retaining the status quo may have a legal effect on subsequent proceedings, the action should continue.  See Apotex, 347 F.3d at 1345–46 (holding that plaintiff's claims were not moot because the plaintiff's rights may be affected if its claims were not decided on appeal); Minn. Mining & Mfg., 289 F.3d at 780–81 (holding that although plaintiff represented that its patent was no longer infringed by the defendant, the court had jurisdiction in the case and the plaintiff could challenge the dismissal with prejudice because the dismissal with prejudice could affect its future legal rights); Dailey, 141 F.3d at 228 (holding that attorney's appeal from an order disbarring her until she paid sanctions was not moot even after she paid the sanctions because a record of disbarment would be "detrimental to an attorney's professional reputation, well-being, and success"); Zenith, 710 F.2d at 810 (allowing the imports to be liquidated at the assessed rate would abolish plaintiff's ability to challenge the dumping duties rate); cf. Burrell, 415 F.3d at 998–99 (holding that the plaintiff's request did not qualify for the collateral consequences exception to mootness because it was merely speculative whether the lower court judgment would affect his future rights);  Pub. Utilities Comm'n, 100 F.3d at 1461 (maintaining the status quo had no legal effect on the plaintiff's rights); Samsung, 398 F. Supp. 2d at 477–78 (stating that the collateral consequences rule does not apply because the status quo was imposed by the parties themselves).  In the instant case, Hylsa challenges a periodic review determination.  As long as that determination is extant, there are real legal consequences for Hylsa beyond recovery of duties attached to the specific entries immediately affected by the determination.

   An alternative, as suggested by Hylsa, is to vacate the determination because it cannot be litigated and it has future consequences.  United States v. Munsingwear is the usual

Court No. 05-00679                                                                                                    Page 9

citation for this proposition. United States v. Munsingwear, Inc., 340 U.S. 36, 39–40 (1950) (stating that the established practice was to vacate or reverse the judgment below if the case became moot on its way to, or pending the decision of, an appellate court). The court, however, does not believe that Hylsa should benefit from expungement of a potentially correct margin rate, and it would be problematic to enable a plaintiff to avoid the consequences of an adverse decision by causing mootness. See U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship, 513 U.S. 18, 29 (1994) (mootness by reason of settlement does not warrant vacatur).

      Hylsa did not cause mootness in the same sense that agreeing to a settlement may, but vacatur seems entirely inappropriate under this administrative scheme. The better course is to recognize that as the administrative process stands, as shaped by Congress and the Department, and given Hylsa's past margins, the current action is not moot.

      It is thereby ORDERED that the defendant's and defendant-intervenor's motions to dismiss are DENIED.

        /s/ Jane A. Restani
        Jane A. Restani
        Chief Judge

Dated this 17th day of January, 2007.
New York, New York.

## NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

                                              Tina Potuto Kimble
                                              Clerk of the Court

Date: _____   By: _____
                                                         Deputy Clerk